IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOE STEVEN McCLENTON, #240 601, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 2:16-CV-884-ALB ) [WO] |
| STATE OF ALABAMA, *et al.*, | ) ) |
| Defendants. | ) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### **I. INTRODUCTION**

This 42 U.S.C. § 1983 action for damages involves a dispute over the adequacy of medical care and treatment afforded Plaintiff Joe McClenton ["McClenton"] during his incarceration at the Bullock Correctional Facility ["Bullock] in Union Springs, Alabama.[1] McClenton names as the defendants Nurse Wilma Nalls ["Nalls"] and the State of Alabama.

Nalls filed an answer, special report, and supporting evidentiary materials addressing McClenton's claims for relief. Docs. 17, 18. In these documents, Nalls denies she acted in violation of McClenton's constitutional rights. Nalls also asserts the complaint is due to be dismissed because McClenton failed to exhaust an administrative remedy available to him through the prison system's medical provider regarding his claims prior to filing the complaint. Doc. 18 at 17–20. Nalls bases her exhaustion defense on McClenton's failure to file a grievance pursuant to the institutional medical provider's grievance procedure regarding the claims raised. Doc. 18 at 17-20.

---

[1] McClenton filed suit while incarcerated at the Kilby Correctional Facility in Mt. Meigs, Alabama. During the pendency of this action he was transferred to the Limestone Correctional Facility in Harvest, Alabama.

Upon receipt of Nalls' special report, the court issued an order providing McClenton an opportunity to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning McClenton that "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment." Doc. 19 at 2. McClenton filed a response to Nalls' special report. Doc. 24. The court then issued an order providing McClenton an opportunity to file any further response addressing Nalls' argument that "he [ ] failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") [prior to filing this federal civil action] . . .." Doc. 25 at 1 (footnote omitted).[2] The order also advised McClenton his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 25 at 3.  The order further notified the parties that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, . . . the court may at any time [after expiration of the time for his filing a response to this order] and without further notice to the parties (1) treat the  special report  and any supporting evidentiary material as a  motion to dismiss and (2) after considering any response as allowed by this order, rule on the motion in accordance with law."  Doc. 25 at 3–4 (footnote omitted). McClenton filed no further response.

---

[2] Nalls also argues, *inter alia,* that McClenton's complaint is barred by the statute of limitations. Doc. 18 at 27. McClenton's complaint, Nalls argues, was filed on November 10, 2016, but based on the facts alleged in the complaint, his claims accrued on October 14, 2014. *See* Doc. 1 at 2.  The court, however, considers September 20, 2016, to be the filing date of the complaint. Although the Clerk stamped the complaint "filed" on November 10, 2016, McClenton signed his complaint on September 20, 2016, and a *pro se* inmate's complaint is deemed by law to have been filed the date it is delivered to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir.1993).

In his response to Nalls' exhaustion defense argued in her special report, McClenton maintains he could not exhaust administrative remedies because the Alabama Department of Corrections ["ADOC"] has no administrative remedy procedure to address prison conditions and therefore no administrative remedy is available for him to exhaust. Doc. 24 at 2–3. To support her special report, Nalls produced relevant documents in McClenton's inmate medical file and affidavits from the Health Services Administrators at the Bullock and Limestone Correctional Facilities and the Director of Nursing from the Kilby Correctional Facility which refute McClenton's claim he was impeded in his ability to access the institutional medical provider's grievance procedure. These documents and affidavits reflect that McClenton has access to the institutional medical provider's administrative remedy procedure and utilized the procedure to file a medical grievance on one occasion regarding a medical matter unrelated to the subject matter of the complaint. Doc. 18-7 at 141. Contrary to McClenton's conclusory and unsupported assertions, this evidentiary material demonstrates that an administrative remedy is provided by the institutional medical provider to which he has access.

"[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374-1375 (11th Cir. 2008) (internal quotations omitted); *Trias v. Florida Dept. of Corrections*, 587 F. App'x 531, 534 (11th Cir. 2014) (District court properly construed defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies[.]").  Pursuant to the court's order of June 22, 2017 (Doc. 25), the court will treat the special report filed by Defendant Nalls (Doc. 18) as a motion to dismiss.

## II.  STANDARD OF REVIEW

In addressing the requirements of 42 U.S.C. § 1997e exhaustion, the Eleventh Circuit has

> recognized that [t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court. This means that until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court.

*Leal v. Ga. Dept. of Corrs.*, 254 F.3d 1276, 1279 (11th Cir. 2001) (citations and internal quotations omitted). Furthermore, "the question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before considering the merits of the case," and that cannot be waived. *Myles v. Miami-Dade Cnty. Corr. & Rehab. Dept.*, 476 Fed. App'x 364, 366 (11th Cir. 2012) (quoting *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004)).

"When deciding whether a prisoner has [properly] exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. 'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.' *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*citing Bryant*, 530 F.3d at 1373-74). If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.' *Id.* (*citing Bryant*, 530 F.3d at 1373-74, 1376)." *Myles*, 476 F. App'x at 366. Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 Fed. App'x at 535. Based on the

foregoing, the Eleventh Circuit has rejected an inmate-plaintiff's argument that "disputed facts as to exhaustion should be decided" only after a trial either before a jury or judge. *Id*. at 534.

Upon review of the complaint, Nalls' dispositive motion, and the undisputed evidentiary materials filed in support thereof, the court concludes Nalls' motion to dismiss is due to be granted.

### III. DISCUSSION[3]

**A.     State of Alabama**

McClenton names the State of Alabama as a defendant.  The law is well-settled that the State of Alabama is absolutely immune from suit. *Papasan v. Allain*, 478 U.S. 265 (1986) (Unless the State of Alabama consents to suit or Congress rescinds its immunity, a plaintiff cannot proceed against the State as the action is proscribed by the Eleventh Amendment and "[t]his bar exists whether the relief sought is legal or equitable.").

> "[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]." *Alabama v. Pugh*, 438 U.S. 781, 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).  There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 131 S.Ct. 1632, 1637–38, 179 L.Ed.2d 675 (2011).  "A State's consent to suit must be 'unequivocally expressed' in the text of [a] relevant statute." *Sossamon v. Texas*, 563 U.S. 277, 131 S.Ct. 1651, 1658, 179 L.Ed.2d 700 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). "Waiver may not be implied." *Id*.  Likewise, "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 786, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)).

---

[3] In accordance with applicable federal law, the court limits its discussion to the claims identified in the complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909-10 (11th Cir. 2012) (holding that a plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim).

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015). Thus, the State of Alabama may not be sued unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit. *Pugh,* 438 U.S. at 782, 98 S.Ct. 3057 (citing Ala. Const. art. I, § 14.)

*Selensky*, 619 F. App'x at 849. "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)). Consequently, any claims lodged against the State of Alabama are frivolous as these claims are "based on an indisputably meritless legal theory[,]" *Neitzke v. Williams*, 490 U.S. 319, 327 (1989), and are therefore due to be dismissed with prejudice. *See* 28 U.S.C. § 1915A(b)(1).[4]

## B. Defendant Nalls

McClenton challenges the adequacy of medical care Nalls provided to him at the Bullock Correctional Facility on October 14, 2014, alleging she injected saline water into his body which resulted in him being transported to a free world hospital for medical treatment where he "[fought] for his life." Doc. 1 at 3. Nalls denies the allegations and also asserts this case against her is

---

[4] Under 28 U.S.C. § 1915A, a court must dismiss a complaint filed by a prisoner against government officers or employees—or any portion thereof—that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or which states no claim upon which relief can be granted. 28 U.S.C. §1915A(b)(1) & (2).

subject to dismissal because McClenton failed to exhaust the administrative remedy provided to him by the institutional medical care provider prior to filing suit as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Doc. 18 at 17–20; Doc. 18-2; Doc. 18-4; Doc. 18-5.

The PLRA compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint.  Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

> The PLRA strengthened [the exhaustion] provision [applicable to inmate complaints] in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all "available' remedies, not just those that meet federal standards. Indeed, as [the Supreme Court] held in Booth, a prisoner must now exhaust administrative remedies even where the relief sought¬—monetary damages—cannot be granted by the administrative remedies.

*Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (internal citation omitted).

Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998). "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). However, "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at

7

1855. Generally, a remedy is "available" when it has "sufficient power or force to achieve an end, [or is] capable of use for the accomplishment of a purpose." *Booth*, 532 U.S. at 737 (quotation marks omitted). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93.

> Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage.

*Id.* at 90–93.  The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot satisfy the PLRA's "exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]"  or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him." *Id*. at 83–84; *Bryant*, 530 F.3d at 1378 (holding that prisoners must "properly take each step within the administrative process" to exhaust administrative remedies in accordance with the PLRA); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (holding that inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

It is undisputed that the health care provider for the Alabama Department of Corrections provides a grievance procedure for inmate complaints related to the provision of medical treatment they receive in prison. Nalls' evidentiary materials reflect McClenton had access to the grievance procedure not only during his incarceration at Bullock but also at Kilby—where he was transported on November 5, 2014, following his release from a free world hospital—and at Limestone and that no correctional or medical staff at these facilities interfered with his ability to file a grievance. Doc. 18-2; Doc. 18-4; Doc. 18-5; Doc. 18-7. Regarding the institutional medical provider's grievance procedure, Jessica Duffel, the Health Services Administrator ["HSA"] at Bullock, explains:

> Upon arriving at any facility operated by the Alabama Department of Corrections ("ADOC"), inmates are notified of the procedures and processes for obtaining medical care and prescribed medications. The health care units within ADOC facilities generally rely upon the same procedures for obtaining emergency and non-emergency (i.e. sick call) medical treatment, conducting chronic care clinics, medication administration, segregation sick call and the like and permitting an inmate's invocation of and participation in a grievance process. As part of the medical staff's orientation of inmates, inmates are provided a form entitled "ACCESS TO HEALTHCARE SERVICES," describing these processes and procedures.
> . . .
>
> As evident from the fact that I receive grievances from inmates at Bullock on a daily basis, inmates at Bullock, including Mr. McClenton, are well-aware of and utilize the grievance process to voice a complaint regarding any medical treatment sought or received during their incarceration at Bullock. The initial orientation process with the ADOC correctional system includes educating inmates as to the availability of the grievance process. The existence of this grievance procedure is well-known among the prison population, as indicated by the fact that the medical staff at Bullock receives inmate requests and/or inmate grievances on a daily basis. The physicians, nurse practitioners, nurses and other medical personnel at Bullock attempt to resolve all inmate concerns prior to an "inmate grievance" being submitted.
>
> The grievance process is initiated when an inmate submits an informal Inmate Grievance form to me through the institutional mail system. After reviewing the Inmate Grievance, I or the person I designate on the medical staff then provides a written response within approximately ten (10) business days of receipt of the

9

> Inmate Grievance. The written response to an Inmate Grievance is included on the bottom portion of the same form containing an inmate's Inmate Grievance. Below the portion of the form designated for the "Response," the following notation appears:
>
> IF YOU WISH TO APPEAL A GRIEVANCE RESPONSE YOU MAY FILE A GRIEVANCE APPEAL. RETURN THE COMPLETED FORM TO THE ATTENTION OF THE HEAL THE SERVICE ADMINISTRATOR. YOU MAY PLACE THE FORM IN THE SICK CALL REQUEST BOX. OR GIVE IT TO THE SEGREGATION SICK CALL NURSE ON ROUNDS.
>
> As stated in the Inmate Grievance forms; the second step of the grievance process involves the submission of a formal Grievance Appeal, at which time the inmate may be brought in for one-on-one communication with the medical staff, me and/or the Director of Nursing. A written response to a formal Grievance Appeal is provided within approximately ten (10) business days of receipt. Inmate Grievance and Grievance Appeal forms are available from the correctional shift commander office at Bullock and the health care unit. Inmates are instructed to place completed Inmate Grievance and Grievance Appeal forms in the grievance box located in the hallway outside of the medical unit. I review the Grievances daily, and I or the medical staff, provide a written response within approximately ten (10) days at the bottom of the form and return a copy of the completed forms to the inmate. I encourage inmates who have complaints about the medical care they have sought or received at Bullock to utilize this grievance process. ***During the course of Mr. McClenton 's incarceration at Bullock, he did not submit a Medical Grievance or Medical Grievance Appeal regarding any issues whatsoever***.

Doc. 18-4 at 5–7 (emphasis in original); *see also* Doc. 18-2; Doc. 18-5. The Director of Nursing at Kilby, La'Toya Devaugn-Strum, testifies that "[d]uring Mr. McClenton's incarceration at Kilby, ***Mr. McClenton only submitted one (1) Medical Grievance and no Medical Grievance Appeals. . . The only Medical Grievance submitted by Mr. McClenton at Kilby is dated February 29, 2016, and concerns heart medication.***" Doc. 18-2 at 3–4; Doc. 18-7 at 141. Taylor McElroy, the HSA at Limestone, testifies that McClenton "***has not submitted any medical grievances or grievance appeals regarding any issues whatsoever since his transfer to Limestone on October 19, 2016.***" Doc. 18-5 at 4. (emphasis in original).

The record establishes that McClenton has an administrative remedy available to him through the institutional medical provider. McClenton does not challenge the availability of the medical provider's grievance procedure within the ADOC's institutions. Nalls' evidence further establishes McClenton failed to properly exhaust the remedy prior to filing this civil action. Specifically, despite the availability of a medical grievance procedure and his access thereto, McClenton submitted no grievance in accordance with the institutional medical provider's grievance procedure addressing the claims he presents for relief. *See* Doc. 18-2; Doc. 18-4; Doc. 18-5; Doc. 18-7.  McClenton's conclusory, unsupported, and refuted allegations do not justify his failure to exhaust this administrative remedy prior to filing his complaint.  Doc. 24. The court, therefore, finds an institutional grievance system is available for McClenton's claims, but he failed to exhaust the administrative remedy available to him.[5] The pleadings and records further establish that the institutional medical provider's administrative remedy remains available to McClenton and  dismissal without prejudice is, therefore, appropriate. *See Ngo*, 548 U.S. at 87-94; *Bryant*, 530 F.3d at 1374-1375 (dismissal for failure to exhaust an administrative remedy when the remedy remains available is not an adjudication of the merits and is without prejudice); *Woodford*, 548 U.S. at 87-94.

## VI. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

---

[5] Even if the court addressed the merits of McClenton's  allegations against Nalls, the undisputed medical records reflect Nalls was not involved in the provision of any of McClenton's medical care on October 13 or 14, 2014. Additionally, McClenton's medical records show his hospitalization from October 14, 2014, to November 5, 2014, was not related to the provision of any intravenous fluids he received on October 14, 2014, but was the result of gastric volvulus and a hiatal hernia. Doc. 18-1; Doc. 18-3; Doc. 18-7 at 25–70; 102, 110–111, 127.

1.  The motion to dismiss filed by Defendant Nalls (Doc. 18) be GRANTED to the extent Defendant Nalls seeks dismissal of this case due to Plaintiff's failure to properly exhaust an institutional administrative remedy prior to filing this case;

2.  This case against Defendant Nalls be DISMISSED without prejudice;

3.  This case against Defendant State of Alabama be DISMISSED with prejudice under 28 U.S.C. § 1915A(b)(1);

4.   No costs be taxed;

5.  Judgment be ENTERED in favor of Defendants.

It is further

ORDERED that **on or before December 6, 2019**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993);  *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 22nd day of November 2019.

                                        /s/    Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE